**In re Kenneth Lynn WILLIAMS, Lori Smith Williams, Debtors.**

No. 02–50853.

United States Bankruptcy Court,
W.D. North Carolina,
Wilkesboro Division.

Aug. 22, 2002.

Geoffrey Planer, Gastonia, NC, for Debtors.

Franklin Drake, Raleigh, NC, for Carolina Federal Credit Union.

Steve Tate, Statesville, NC, Chapter 13 Trustee.

## ORDER OVERRULING OBJECTIONS TO CLAIM

J. CRAIG WHITLEY, Bankruptcy Judge.

This matter came before the Court for hearing on August 8, 2002, upon the Debtors' Objection to Claim of Carolina Federal Credit Union, Trustee's Objection to Claims(s), and Carolina Federal Credit Union's response thereto. Geoffrey Planer, attorney for the Debtors, Franklin Drake, attorney for Carolina Federal Credit Union, and Steve Tate, Chapter 13 Trustee, were present at the hearing.

Based upon the facts presented and the record, this Court finds:

1. The Debtors filed a voluntary Chapter 13 petition on May 8, 2002, and the case was confirmed on July 8, 2002.

2. The Debtors are members of Carolina Federal Credit Union ("CFCU").

When they set up their account with CFCU in 1996, the Debtors signed a Loanliner Application and Credit Agreement (the "Loanliner Agreement"). The Loanliner Application and Credit Agreement is a widely used plan designed to allow credit union members to obtain loans with their credit union on an ongoing and expedited basis. One term of the Loanliner Agreement is a future advance clause which provides that any collateral given for a current loan would also secure future advances made by CFCU. The Agreement also includes an after-acquired property clause pursuant to which any collateral given to secure future loans would also serve as security for existing loans.

3. On August 12, 1998, the Debtors obtained a $5,000.00 loan from CFCU to make home repairs (the "First Loan").

4. The First Loan was an unsecured debt. The "SECURITY OFFERED" sections on the front page of the First Loan agreement were left blank, evidencing the parties' intention that no collateral was being taken as security.[1]

5. On March 16, 1999, the Debtors borrowed $5,975.00 from CFCU. This loan was also evidenced by a borrowing agreement (the "Second Loan").

6. Unlike the First Loan, the Second Loan was intended to be a secured loan. The completed Second Loan agreement indicated in two different places that a 1994 Mazda 2300 pickup truck (the "Mazda") was being offered as security.

7. The issue in this case is whether the Mazda was also intended to collateralize the First Loan pursuant to the after-acquired property clause in the Loanliner Agreement as well as the fine print on

---

1. Although no additional collateral was offered as security for the First Loan, pursuant to the terms of the Loanliner Agreement, the First Loan was secured by "the shares and deposits in all joint and individual accounts" the Debtors had with CFCU.

page two of the Second Loan agreement which provided that the security interest offered secures the current loan and "any other amounts you owe the credit union for any reason now or in the future".

8. When the Williams filed bankruptcy, CFCU filed two claims in their case. "Claim A" was for $2,673.15, and all parties agree Claim A is fully secured by the Mazda pursuant to the Second Loan agreement.

9. The disputed claim is "Claim B" in the amount of $2,544.80.

10. The Trustee objected to the secured status of Claim B contending that no excess equity exists in the Mazda to serve as security for the claim.

11. The Debtors also objected to Claim B, but on the basis that it was not even partially secured. The Debtors dispute any intention to have a secured debt despite the cross-collateral language in the Second Loan agreement and the Loanliner agreement.

12. Both objections are misplaced. Using this Court's post-*Rash* valuation convention (retail value—10%), the Mazda would be valued at $3,825.00. Accordingly, there appears to be $1,151.85 left to carry over to Claim B. Consequently, Claim B is not unsecured due to a lack of equity.

13. As to the Debtors' argument, the after-acquired property language on page 2 of the Second Loan agreement and page 2 of the Loanliner Agreement clearly provides that the security offered for the Second Loan (the Mazda) would serve as collateral for any amounts the Debtor currently owed CFCU. This would include the First Loan

(Claim B). The wording of this provision evidences the parties intent at the time of the Second Loan to make the formerly unsecured First Loan at least now partially secured.[2] Thus, CFCU's Claim B is secured to the extent of the excess equity in the Mazda.

14. This Court has on three prior occasions found Loanliner debts to be unsecured. *In re Worley,* 97–30401 (Bankr. W.D.N.C. June 12, 1997); *In re Bowman,* 96–30125 (Bankr.W.D.N.C. November, 22, 1996); *In re Wiggins,* 96–30294 (Bankr. W.D.N.C. October 15, 1996). However, this case is factually distinguishable from these earlier decisions.

15. Unlike this case, in *Worley, Bowman,* and *Wiggins,* the debtor initially took out a *secured* loan pursuant to a Loanliner Agreement which contained a future advance clause. The Debtors thereafter got a second, *unsecured* loan. When these subsequent loans were made, the "Security Offered" sections of the security agreement were either left blank or included language such as "none" or "signature"—expressing the parties present intention that no security was being taken for the current loan. Although the credit unions asserted that the future advance language in the original lending agreement would make the subsequent loan secured, the court disagreed. The earlier future advance provision was overridden by the stated intent of the parties in the second loan agreements that the subsequent loans would be unsecured.

16. Here, there are no such internal inconsistencies between the loan documents. While the First Loan was original-

---

2. The Williams say that they were not aware that the Mazda was intended to secure the First Loan, as the after-acquired property clause is a boilerplate provision. However, one is presumed to have read and agreed to the terms of a contract he has executed. While the boilerplate language may be distasteful, the Court has no legal basis upon which to disregard it.

ly unsecured, the parties agreed in the Second Loan agreement and the Loanliner agreement that it be converted into at least a partially secured debt. Unlike the earlier cases, here there is no ambiguity or contrary intent expressed in the Second Loan agreement that would override the after-acquired property clauses.

It is therefore ORDERED:

1. The Debtors' Objection to Claim of Carolina Federal Credit Union and the Trustee's Objection to Claim(s) are overruled.

2. CFCU's Claim B shall be treated as secured to the extent of the excess equity in the Mazda or $1151.85. The remaining $1,392.95 of CFCU's Claim B shall be treated as unsecured.